UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Jeffrey Turino,<br><br>    Defendant | 2:09-cr-00132-JAD-GWF<br><br>**Order Denying Defendant Turino's Motion in Limine to Exclude Testimony of Bruce Harlan, Esq.[ECF 344]** |

Defendant Jeffrey Turino and eight co-defendants[1] stand charged with 15 counts of securities fraud, money laundering, and related offenses. Turino moves to exclude testimony from his former attorney, Bruce Harlan. Turino contends that the government should be precluded from calling Harlan at trial because all communications between Turino and Harlan are protected by the attorney-client privilege.[2] Because Turino has failed to establish the existence of an attorney-client relationship or identify any protected communications, I deny his motion without prejudice.

## Background

In the second superseding indictment, the grand jury charges that Turino and his co-defendants conspired to sell billions of dollars of unregistered securities through various corporate shells, including Pinnacle Business Management, Inc.[3] Pinnacle was incorporated in May 1997 and Turino was designated its CEO. Over the next six years, Turino and others issued billions of shares of allegedly fraudulent Pinnacle stock.[4]

In May 2002, the Securities and Exchange Commission filed a civil complaint against Pinnacle, Turino, and another participant in the United States District Court for the Middle District

---

[1] The government initially indicted 10 defendants, but two have since been terminated from this case.

[2] See ECF 344.

[3] ECF 63 at ¶ 1.

[4] *Id.* at ¶¶ 7–8.

of Florida.[5]  Final judgment was entered on December 15, 2003.  That order prohibited Turino from selling penny stocks until December 5, 2008.[6]  During a May 2006, investigation into Turino's compliance with that order, the SEC deposed Harlan.[7]  Harlan testified that he "had been working as a normal attorney handling day-to-day maters for . . . Pinnacle Business Management."[8]  He further testified: "I handled things that came up, like the offices for [Pinnacle], negotiated leases, any type of problems on cars.  I wasn't the primary attorney, but I was–it was just work that I would do from time to time."[9]  He explained that when Turino and a co-participant resigned from their posts as officers of Pinnacle during the 2003 SEC investigation, they suggested that Harlan become president of Pinnacle.[10]  Harlan indicated that, as president, he unsuccessfully sought out businesses to "put into" Pinnacle.[11]  Harlan also testified that, when he told Turino that he was testifying before the SEC during the 2006 investigation into Turino's compliance, Turino responded "you're the lawyer, you do whatever you think."[12]

As proof of his attorney-client relationship with Harlan, Turino attaches a May 20, 2004, letter from Harlan stating, in part: "I represent Mr. Jeffrey Turino.  In such capacity I handle Mr. Turino's business and personal financial transactions."[13]  Turino also points to Harlan's deposition testimony as evidence of an attorney-client relationship: "you're the lawyer, you do whatever you

---

[5] *Id.* at ¶ 10.

[6] *Id.*

[7] ECF 357 at 2.

[8] *Id* (internal quotations omitted).

[9] *Id* (internal quotations omitted).

[10] *Id.* at 2.

[11] *Id.*

[12] *Id.* at 3 (internal quotations omitted).

[13] ECF 357 at 5.

think."[14]  He also disputes that Harlan was ever President of Pinnacle rather than its attorney.[15]

The government responds that Turino has failed to show that he and Harlan were in an attorney-client relationship at any point other than in May 2004, and that any purported relationship would only cover communications related to Turino's "business and personal financial transactions."[16]  The government also argues that, even assuming the attorney-client relationship would otherwise cover communications regarding Pinnacle, those communications are admissible under the crime-fraud exception.[17]  According to the government, to the extent that Turino utilized Harlan's services as an attorney with regard to Pinnacle, he did so in furtherance of his criminal enterprise.[18]

**Discussion**

**A.    Motions in Limine**

The Federal Rules of Evidence do not explicitly authorize motions in limine, but under the district courts' trial-management authority, judges can rule on pretrial evidentiary motions.[19]  Limine rulings are provisional; they are "not binding on the trial judge [who] may always change [her] mind during the course of a trial."[20]  Denying a motion in limine does not guarantee that all evidence raised in the motion will be admissible at trial;[21] it "merely means that without the context of trial, the court

---

[14] ECF 359 at 3.

[15] *Id.*

[16] ECF 357 at 4.

[17] *Id.* at 5.

[18] *Id.* at 5–8.

[19] *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).

[20] *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in-limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

[21] *Tracey v. A. Family Mut. Ins. Co.*, 2010 WL 3724896 (D. Nev. 2010) (quoting *Ind. Ins. Co.*, 326 F. Supp. 2d at 846).

is unable to determine whether the evidence in question should be excluded."[22]

**B.     Attorney-Client Privilege**

"The fact that a person is a lawyer does not make all communications with that person privileged."[23] The attorney-client privilege is strictly construed[24] and protects only confidential communications made by a client to an attorney to obtain legal services.[25] The party asserting the privilege bears the burden of proving its existence.[26] A party asserting the privilege must also identify specific communications and the grounds supporting the privilege for each piece of evidence over which the privilege is asserted.[27] Blanket assertions are "extremely disfavored."[28]

**C.     Turino has not established the existence of an attorney-client relationship with Harlan or identified any privileged communications.**

Turino asserts that "*all* communications between himself and [Harlan] were privileged since all the communications between [them] were conducted within the scope of the traditional attorney-client relationship."[29] Turino has not even attempted to identify the specific communications he seeks to protect or the grounds for asserting the privilege over those statements. Because Turino has not identified the statements that he seeks to protect or when they were made, I am unable to fairly determine the time frame during which he must prove that an attorney-client relationship existed. The letter Turino attaches simply shows that Harlan was his personal attorney in May 2004 and that he handled Turino's "business and personal financial transactions" in that capacity. Turino has not

---

[22] *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (internal quotation marks omitted).

[23] *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002).

[24] *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

[25] *Fisher v. United States*, 425 U.S. 554, 562 (1989).

[26] *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000).

[27] *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977).

[28] *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

[29] ECF 344 at 3.

identified any protected statements made in May 2004 that relate to procuring Harlan's services. The cited deposition testimony also fails to establish the existence of an attorney-client relationship between Turino and Harlan. The testimony indicates that Harlan worked as an attorney for *Pinnacle* handling day-to-day matters, not *Turino personally*. A corporation's privilege does not automatically extend to individuals.[30] Because Turino has not met his burden of showing that the privilege applies, I need not consider the government's argument that any communications made between Turino and Harlan are not privileged because they are subject to the crime-fraud exception.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that defendant's Motion in Limine to Exclude Testimony **[ECF 344]** is **DENIED** without prejudice to Turino's ability to reurge the exclusion of specific, protected communications at trial.

Dated this 23rd day of November, 2015

_____
Jennifer A. Dorsey
United States District Judge

---

[30] *United States v. Plache*, 913 F.2d 1375 (1990).